IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| WILLIAM J. LOGAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:06-CV-221 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |

## **MEMORANDUM OPINION**

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of defendant Commissioner's final decision denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act ("the Act"). For the reasons provided herein, defendant's motion for summary judgment [doc. 16] will be granted, and plaintiff's motion for summary judgment [doc. 12] will be denied. The final decision of the Commissioner will be affirmed.

I.

*Procedural History*

Plaintiff filed the present application in February 2004, claiming both that he "cannot find light duty work" and that he is disabled by back problems, anxiety, and panic attacks. [Tr. 46, 53]. He alleged a disability onset date of October 15, 2003. [Tr. 46]. The application was denied initially and on reconsideration. Plaintiff then requested a hearing,

which took place before an Administrative Law Judge ("ALJ") in May 2005.

On August 23, 2005, the ALJ issued a decision denying benefits. He found that plaintiff suffers from a severe musculoskeletal (lumbar) impairment and abnormal pulmonary functioning, but that these conditions did not meet or equal any impairment listed by the Commissioner. [Tr. 17-20]. The ALJ further found "much evidence of symptom exaggeration," citing: plaintiff's activity level; his violation of a physician narcotics agreement; his history of imprisonment; the absence of supporting objective evidence; and his cancellation of multiple physical therapy and doctor appointments. [Tr. 19]. The ALJ concluded that plaintiff retains the residual functional capacity ("RFC') for the light level of exertion limited by no exposure to pulmonary irritants and no more than occasional stooping, bending, and squatting. [Tr. 18]. A vocational expert identified a significant number of jobs existing in the regional and national economies that could be performed by a claimant of plaintiff's RFC. [Tr. 18]. Plaintiff was accordingly found ineligible for benefits.[1]

Plaintiff then sought review from the Commissioner's Appeals Council. Review was denied on August 11, 2006. [Tr. 6]. The ALJ's ruling therefore became the Commissioner's final decision. *See* 20 C.F.R. § 404.981. Through his timely complaint, plaintiff has properly brought his case before this court. *See* 42 U.S.C. § 405(g).

---

[1] There exists a discrepancy in the ALJ's decision. The ALJ stated that, as of the date of his ruling, plaintiff continued to meet the insured status requirements of the Act. [Tr. 17, 19]. However, plaintiff's insured status actually expired on June 30, 2004. [Tr. 50, 59, 108]. Plaintiff bears the burden of demonstrating that he became disabled on or before that date. *See Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).

II.

*Background*

Plaintiff was born in 1960. [Tr. 46]. He has a tenth grade education, a GED, and vocational training in HVAC. [Tr. 84, 615, 665]. His past relevant work is as a dishwasher and as a heating and air technician. [Tr. 53]. He testified that he would "love to" work, but "won't nobody hire me." [Tr. 679-80]. It appears that plaintiff received disability benefits from 1993 through 1996, but that those benefits were discontinued upon his incarceration for robbery and cocaine possession. [Tr, 69, 86, 614].

Plaintiff testified that he experiences panic attacks "all the time." [Tr. 676]. He testified that he performs no housework, instead doing "nothing, just watch TV and sit around." [Tr. 678]. Elsewhere, plaintiff has acknowledged being able to shop, prepare light meals, wash dishes, vacuum, dust, fish, make his bed, and visit family. [Tr. 81, 617]. He has stated both that he *can* drive independently [Tr. 81, 613, 617], and that he *cannot* drive independently due to medication [Tr. 498, 679].

In March 2004, plaintiff implied that he cannot travel to visit family in Ohio due to his condition. [Tr. 83]. However, four months later (two days after the expiration of his insured status) he cancelled a physical therapy appointment in order to travel to Ohio. [Tr. 500-01].

Plaintiff has stated that he takes four different pain medications multiple times everyday, and that his medications cause drowsiness. [Tr. 87]. He testified that he "just

sleep[s] all day." [Tr. 669]. However, plaintiff cancelled a June 17, 2004 physical therapy appointment because "he had another appointment and was really busy all day." [Tr. 508]. On June 2, 2004, to treating physician Emily Morawski "he denied that he has any back pain continuously needing every day pain medications." [Tr. 516].

Plaintiff testified of numbness in his left index and middle fingers secondary to cervical disc disease. [Tr. 671-72]. His testimony was vague regarding the onset date of this condition. [Tr. 671-72]. He stated that an unidentified medical source told him that the problem would "maybe, maybe not" resolve on its own. [Tr. 672]. Plaintiff testified that his pain medication is used for both his lumbar and his cervical pain. [Tr. 673].

III.

*Relevant Medical Evidence*

Plaintiff specifically challenges only the ALJ's treatment of his alleged emotional and *cervical* spine impairments. Accordingly, based on the briefing presented in this case, the court need not discuss at length the evidence pertaining to plaintiff's other health conditions.

A. <u>Mental</u>

Physician Morawski has diagnosed depression and generalized anxiety disorder. [Tr. 522]. In June 2004, Dr. Morawski stopped treating plaintiff because he violated his physician narcotic agreement. [Tr. 512, 517].

Psychological examiner Beth Ballard, M.A. performed a consultative examination on June 11, 2004. Ms. Ballard diagnosed a personality disorder with antisocial features and an anxiety disorder with depressed and anxious features. [Tr. 618]. Regarding work-related activities, however, Ms. Ballard predicted that plaintiff would experience only one "mild" limitation, pertaining to "social interactions due to his anxiety." [Tr. 617-18].

B. Physical

1. Prior to Date Last Insured

On November 25, 2003, treating physician Richard Duncan opined that plaintiff "can continue to perform light duty work, no heavy lifting or pushing greater than 20-25 lbs. These would be permanent restrictions." [Tr. 580]. Dr. Duncan treated plaintiff for complaints of *lumbar* - not *cervical* - pain. [Tr. 581-82].

The record contains various temporary work restrictions predicted by nurse practitioner Lori Brooks. For example, on June 20, 2004, Ms. Brooks opined that plaintiff could return to full time work lifting no more than twenty pounds with limited stair climbing, pushing, pulling, and stooping for one to two weeks. [Tr. 506]. She recommended evaluation "per Dr. Duncan" to determine plaintiff's long-term work capacity. [Tr. 506].

On April 16 and 18, 2004, plaintiff reported mild to moderate bilateral arm pain to the staff of Indian Path Medical Center. [Tr. 587-88, 590]. The record contains no objective evidence or subjective complaints relating the arm pain to plaintiff's cervical spine. [Tr. 587-88, 590]. Grip strength, sensation, and range of motion were all normal. [Tr. 588].

5

## 2. After Date Last Insured

Nonexamining physician Frank Pennington completed a Physical RFC Assessment in July 2004. Dr. Pennington predicted that plaintiff could work at the light level of exertion limited only by no concentrated exposure to pulmonary irritants. [Tr. 634-39].

Continuing to report only *lumbar* radiculopathy, plaintiff visited physical therapist Ernie Dickson in October 2004. Mr. Dickson opined that plaintiff should lift no more than eight to ten pounds. [Tr. 492].

On November 9, 2004, plaintiff told the Friends in Need Health Center that he had experienced recurring stiffness and soreness in his neck for the past year. [Tr. 656]. On January 29, 2005, an Indian Path physician diagnosed *cervical* radiculopathy. [Tr. 648]. Plaintiff reported neck pain, left arm pain, and numbness in the left index and middle fingers. [Tr. 643]. February 2005 diagnostic imaging revealed "small," "mild," and "mild to moderate" cervical problems. [Tr. 643-44].

On February 7, 2005, Dr. Nathan Ridgeway recorded plaintiff's complaint that "*[t]wo weeks ago* the patient awoke with pain in his neck with radiation down the back of the left arm, radial aspect of the forearm and second and third fingers. Every time he extended his neck the pain would shoot down his arm and his fingers would become numb." [Tr. 654] (emphasis added). On February 28, 2005, Dr. Ridgeway noted mildly reduced grip of the left hand, numbness to pinprick of two left fingers, and limited range of motion in the neck. [Tr. 653]. Plaintiff subsequently consulted a neurosurgeon who did not recommend

surgery "unless he continued to have a lot of trouble for at least six more months." [Tr. 652].

IV.

*Vocational Expert Testimony*

Vocational expert Norman Hankins ("Dr. Hankins" or "VE") testified at plaintiff's administrative hearing. The ALJ presented a hypothetical claimant of plaintiff's age and education. The claimant would be limited to the light level of work, with only occasional squatting, bending, and stooping, and no exposure to excessive dust or fumes. [Tr. 682]. Psychologically, the hypothetical claimant would have the abilities and mild limitation predicted by examiner Ballard. [Tr. 617-18, 682].

In response, the VE identified a significant number of jobs existing in the state and national economies which the hypothetical worker could perform. [Tr. 683]. If plaintiff's testimony were credited as to left hand finger numbness, Dr. Hankins responded that jobs such as waiter or packer could still be performed. [Tr. 683-85]. If plaintiff's subjective complaints regarding his back pain and/or mental health were fully credited, all employment would be precluded. [Tr. 683-84].

V.

*Applicable Legal Standards*

This court's review is confined to whether the ALJ applied the correct legal standards and whether his factual findings were supported by substantial evidence. 42 U.S.C. § 405(g)*; Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial

7

evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). Nonetheless, the court must take care not to "abdicate [its] conventional judicial function," despite the narrow scope of review. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 490 (1951).

A claimant is entitled to disability insurance payments under the Social Security Act if he (1) is insured for disability insurance benefits, (2) has not attained retirement age, (3) has filed an application for disability insurance benefits, and (4) is under a disability. 42 U.S.C. § 423(a)(1). "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423 (d)(2)(A). Disability is evaluated pursuant to a five-step analysis summarized by the Sixth Circuit as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters*, 127 F.3d at 529 (citing 20 C.F.R. § 404.1520). Claimants bear the burden of proof at the first four steps. *See Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *See id.*

VI.

*Analysis*

Plaintiff offers multiple theories in support of reversal or remand. The court will address these issues in turn.

9

## A. Step Two Severity

Plaintiff first argues that "[t]he ALJ erred in failing to find the plaintiff's mental impairments and cervical impairment to be severe . . . and in failing to properly consider their effects on the plaintiff's ability to work." As plaintiff correctly observes, the "severe" impairment threshold of step two is a "*de minimis* hurdle" which is to be used only "as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Higgs v. Bowen*, 880 F.2d 860, 862-63 (6th Cir. 1988) (citation omitted). However, even if the court were to assume that plaintiff's cervical and mental conditions are "severe," his reliance on *Higgs* is misplaced.

This is not a case in which a claimant has alleged only one impairment. In such cases, of course, an adverse determination at step two causes the entire application to be "screened out" as "totally groundless." By contrast, in the present case plaintiff alleges - and the ALJ recognized - multiple severe impairments. Accordingly, despite the finding of no severe mental or cervical impairment, plaintiff's claim survived step two. *See, e.g., Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

The ALJ then went on to consider plaintiff's mental and cervical conditions in reaching his RFC conclusion. He recognized plaintiff's subjective mental health complaints. [Tr. 17-18]. He also discussed at length the only objective evidence on this issue, the evaluation by Ms. Ballard. [Tr. 18]. In fact, the ALJ cited Ms. Ballard's conclusions in full, both in his opinion and in his hypothetical to the VE. [Tr. 18, 618, 682].

As noted, Ms. Ballard concluded that plaintiff would only have one mild vocational limitation as a result of his mental condition. A significant number of jobs remain despite that limitation. [Tr. 682-83].

The ALJ also considered plaintiff's cervical complaints in determining his RFC. He noted that treatment by Dr. Ridgeway had been "brief" and that no surgery had been recommended. [Tr. 17]. Even if plaintiff's associated complaints of finger numbness were fully credited, a significant number of jobs would remain. [Tr. 683-85].

The court further notes that plaintiff bears the burden of proving that his cervical condition was disabling as of June 30, 2004. *See Higgs*, 880 F.2d at 862. With few exceptions, plaintiff's musculoskeletal complaints prior to 2005 (both before and after June 30, 2004) pertain to *lumbar* back pain only. [Tr. 79, 82, 87, 94-96, 101-03, 492, 496, 499, 502, 505, 509-10, 516-18, 521, 550-51, 559, 561, 567, 585, 595-97]. For example, in his March 2004 Activities of Daily Living Questionnaire, plaintiff noted "distress" only in his "lower back" and he alleged that he cannot perform most household chores due to "pain in lower back." [Tr. 79, 82]. In his March 2004 Pain Questionnaire, he stated that his pain is located in the lower back, hips, and legs. [Tr. 87]. In his September 2004 "Disability Report - Appeal," plaintiff related his medications and doctors appointments only to *lower* back pain. [Tr. 101-03]. Further, plaintiff told Dr. Ridgeway that his cervical problems did not commence until late January of 2005. [Tr. 654].

In sum, despite finding plaintiff's mental and cervical complaints to be "nonsevere," the ALJ went on to consider both points in light of the objective evidence of record. The ALJ's treatment of both conditions is supported by substantial evidence. Moreover, plaintiff cannot establish that he had a severe cervical impairment prior to his date last insured. [Tr. 654]. The ALJ did not err in his step two conclusions.

B. SSR 96-8p

Next, it is argued that the ALJ violated Social Security Ruling 96-8p, 1996 WL 374184, by not individually discussing plaintiff's ability to perform each of the functions of light work. However, "[a]lthough SSR 96-8p requires a 'function-by-function evaluation' to determine a claimant's RFC, case law does not require the ALJ to discuss those capacities for which no limitation is alleged." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002). Like the ALJ in *Delgado*, the present ALJ "discussed the medical and other evidence on the disputed issues and explained the basis for his determination of [plaintiff's] RFC." *Id.* at 548.

Further, plaintiff does not specify which function[s] of light work the ALJ allegedly failed to address. The issue is waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

C. Medication Side Effects

Lastly, plaintiff argues that "the ALJ erred in failing to address the effects of the plaintiff's medications on his ability to work." As noted above, plaintiff has stated that

he takes four different pain medications multiple times everyday, and that his medication causes drowsiness. [Tr. 87]. He testified that he "just sleep[s] all day." [Tr. 669].

However, within the month prior to the expiration of his insured status, plaintiff cancelled a physical therapy appointment because "he . . . was really busy all day." [Tr. 508]. On June 2, 2004, he denied to treating physician Morawski "that he has any back pain continuously needing every day pain medications." [Tr. 516]. At that same appointment, plaintiff claimed that Dr. Morawski had only given him a one month prescription four months prior, when in actuality Dr. Morawski had given him a *three month* prescription. [Tr. 516-17]. Dr. Morawski wrote that she "[w]ill not give him any more narcotics today" [Tr. 517] and soon stopped treating plaintiff because he had obtained narcotics from another source in violation of his signed narcotic agreement. [Tr. 512, 517].

The administrative record contains no objective evidence of serious medication side effects. Plaintiff's subjective complaints on this point obviously lack credibility. This issue warrants no further discussion.

## VII.

*Conclusion*

The final decision of the Commissioner will be affirmed. An order consistent with this opinion will be entered.

ENTER:

        s/ Leon Jordan
  United States District Judge